# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

KEITH LARON BROOKS,

                Petitioner,

vs.                          Case No.:     3:12-cv-1266-J-32JRK
                                                    3:09-cr-76-J-32JRK

UNITED STATES OF AMERICA,

                Respondent.

_____/

## ORDER

This case is before the Court on Petitioner Keith Laron Brooks's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 1).[1]  The United States filed a response opposing relief (Doc. 17), and Petitioner filed both a reply (Doc. 21) and a supplemental reply (Doc. 37).  Pursuant to Rule 8(a) of the Rules Governing Section 2255 Proceedings, the Court has determined that an evidentiary hearing is not necessary to decide the petition.  See Aron v. United States, 291 F.3d 708, 714–15 (11th Cir. 2002) (an evidentiary hearing on a § 2255 petition is not required when the petitioner asserts allegations that are affirmatively contradicted by the record or patently frivolous, or if in assuming that the facts he alleges are true, he still would not be entitled to any relief).  For the reasons set forth below, Petitioner's motion to vacate is due to be denied.

---

[1]     Citations to Petitioner's criminal case file, United States of America vs. Keith Laron Brooks, 3:09-cr-76-J-32JRK, are denoted as "Crim. Doc. ___."  Citations to Petitioner's civil § 2255 case file, 3:12-cv-1266-J-32JRK, are denoted as "Doc. ___."

## I.    Procedural History

On January 12, 2009, police officers obtained a warrant to search a mobile home located at 10691 McLaurin Road East in Jacksonville, Florida. The warrant authorized officers to search the residence, the curtilage, and any vehicle parked therein for cocaine and drug paraphernalia. When officers arrived to execute the warrant, they encountered Petitioner on the front porch. The officers told Petitioner to lie down on the ground, but he fled inside the trailer instead, and the police followed. (Crim. Doc. 91 at 71-72). Petitioner headed toward a room in the back of the home, where, during the execution of the warrant, police recovered a handgun, ammunition, drug paraphernalia, mail addressed to Petitioner, and Petitioner's Florida identification card, among other things. Petitioner's mother told officers that Petitioner lived in the back bedroom. (Crim. Doc. 91 at 112). Elsewhere, including in a vehicle parked outside the residence, the police recovered cocaine. Based on these discoveries, the police arrested Petitioner, who also happened to be a convicted felon.

On March 12, 2009, a grand jury indicted Petitioner on one count of possession of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Crim. Doc. 1, Indictment). Petitioner moved to suppress the evidence, in which he raised several challenges to the sufficiency of probable cause, the search warrant, and the scope of the government's search. (Crim. Doc. 18, Motion to Suppress). The Court conducted a suppression hearing (see generally Crim. Doc. 39, Suppression Transcript), after which a United States Magistrate

Judge issued a comprehensive Report and Recommendation which recommended that the Court deny the motion (Crim. Doc. 43, Report and Recommendation). Neither Petitioner nor the government objected to the Report, and the Court adopted the Report and Recommendation as its opinion, thereby denying the motion to suppress. (See Crim. Doc. 64, Order Adopting R&R).

Petitioner proceeded to trial, which began on September 14, 2009 (see Crim. Doc. 91, Trial Tr. Vol. I) and ended on September 17, 2009 (see Crim. Doc. 94, Trial Tr. Vol. IV). Both sides introduced testimony from a number of witnesses. Petitioner in particular presented eight witnesses in an effort to show that he was unaware of, and did not possess, either the firearm, the ammunition, or any of the contraband seized at the residence. Petitioner's defense was that he was merely present at the trailer, but in light of the large number of people who regularly or intermittently lived there, the contraband likely belonged to someone else. After extensive deliberations, the jury deadlocked as to the drug possession charge, but convicted Petitioner of possessing a firearm as a convicted felon. (See Crim. Doc. 95, Trial Tr. Vol. V at 18-21). The Court declared a mistrial as to Count One of the Indictment – the drug charge (Trial Tr. Vol. V at 24), the United States moved to dismiss Count One (Crim. Doc. 82, Motion to Dismiss Count One), and the Court granted the motion (Crim. Doc. 86, Order Granting Motion to Dismiss). Accordingly, Petitioner was only adjudged

guilty of possession of a firearm by a convicted felon, for which the Court sentenced him to a term of 200 months in prison.  (Crim. Doc. 87, Judgment).[2]

Petitioner appealed his conviction to the Eleventh Circuit Court of Appeals. See United States v. Brooks, 426 F. App'x 878 (11th Cir. 2011).  Petitioner raised five arguments on direct review:

> (1) sufficient evidence [did] not support the jury's verdict that he unlawfully possessed a firearm; (2) the district court erred in admitting (a) [a witness's] testimony that Brooks previously possessed a firearm and (b) Brooks's 2003 felony conviction for cocaine distribution, pursuant to Fed. R. Evid. 404(b); (3) the district court abused its discretion in denying his motion to sever his drug count from his firearm count; (4) the district court erred in denying his motion to suppress; and (5) the district court erred in denying his motion to compel the identity of a non-testifying confidential informant ("CI").

Id. at 879-80.  The court addressed the first three issues on the merits and rejected each argument.  Id. at 880-83.  With respect to the denial of the motion to suppress and the motion to compel the identity of the CI, the court held that Petitioner had waived appellate review by not objecting to the Magistrate Judge's recommendation to deny the motions, and therefore it did not reach the merits.  Id. at 883.  Accordingly, the court affirmed Petitioner's conviction and sentence.  Id. at 883-84.

Petitioner moved the Eleventh Circuit for an en banc rehearing, but the court denied that request on August 18, 2011.  (See Response at 3).  Petitioner did not request certiorari review from the Supreme Court.  Therefore, Petitioner's conviction and sentence became final on November 17, 2011, upon the expiration of the 90-day

---

[2]     The Court also determined that the 15-year mandatory minimum provision of the Armed Career Criminal Act, 18 U.S.C. § 924(e), applied.

period for seeking certiorari review. Petitioner filed the Motion to Vacate on November 16, 2012, and it is therefore timely under 28 U.S.C. § 2255(f)(1).

## II.    Petitioner's Motion to Vacate

In the Motion to Vacate, Petitioner raises fourteen issues or arguments. Those issues are as follows:  (a) ineffective assistance of counsel for preventing Petitioner from testifying at trial (Doc. 1 at 6-9); (b) ineffective assistance of counsel for not arguing that the drug charge and the firearm charge were improperly joined (id. at 9-19); (c) ineffective assistance of counsel for not seeking an "expedited ruling" on whether the Court would admit evidence of a prior drug conviction under Federal Rule of Evidence 404(b) (id. at 19-24); (d) ineffective assistance of counsel for not pointing out in closing arguments that Petitioner's fingerprints were not on the firearm (id. at 24-25); (e) ineffective assistance of counsel for not reminding the Court to admonish the jurors not to share notes with each other (id. at 26-28); (f) the district court erred by not providing additional admonishments to the jurors not to share their notes (id. at 28-30); (g) the prosecution erred when it failed to remind the Court to admonish the jurors not to share their notes (id. at 30-31); (h) appellate counsel rendered ineffective assistance by not raising the issue of alleged note-sharing by jurors (id. at 31-33); (i) ineffective assistance of counsel at jury selection for permitting a correctional officer, the spouse of an FBI agent, and the son of a former FBI agent to be empaneled (id. at 33-36); (j) the district court committed error by not removing the three aforementioned jurors, because the three jurors did not affirm that they could be fair and impartial (id. at 36-37); (k) ineffective assistance of counsel for not

eliciting testimony from two defense witnesses that they knew the firearm belonged to Petitioner's son rather than Petitioner himself (id. at 37-38); (l) ineffective assistance of counsel for failing to object to the Magistrate Judge's order denying a motion to compel the identity of a confidential informant and for failing to object to the Report and Recommendation on the motion to suppress (id. at 38-40); (m) counsel allowed other "inappropriate" jurors to be selected during voir dire (id. at 40); and (n) counsel made damaging remarks in his opening statement and closing argument (id.).

## III.   Withdrawn Arguments

After having obtained transcripts for his review, Petitioner withdrew his arguments as to issue (d), that counsel was ineffective for not arguing that Petitioner's fingerprints were not on the firearm, and issue (n), that counsel made damaging remarks in the opening statement and closing argument. (Doc. 21, Reply at 13, 41). Accordingly, the Court will not consider these issues further.

## IV.   Procedural Bars

"Under the procedural default rule, a defendant generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else the defendant is barred from presenting that claim in a § 2255 proceeding." Lynn v. United States, 365 F.3d 1225, 1234 (11th Cir. 2004) (citing McCoy v. United States, 266 F.3d 1245, 1258 (11th Cir. 2001)). Claims that are ripe for direct appeal but not raised are procedurally defaulted, and may not be raised for the first time in a motion to vacate under 28 U.S.C. § 2255. Lynn, 365 F.3d at 1234. "This rule generally

applies to all claims, including constitutional claims." Id. (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).

Three of Petitioner's issues have been procedurally defaulted.  Issue (f), that the Court erred by failing to remind the jurors not to share their notes; issue (g), that the prosecution committed error by not reminding the Court to admonish the jurors about sharing their notes; and issue (j), that the Court erred by not removing three jurors for not affirming their impartiality, could each have been raised on direct appeal, but were not.  The record, as reflected in the jury selection transcripts and trial transcripts, was sufficiently developed that the alleged errors could have been briefed on appeal, but Petitioner did not do so.  Accordingly, those issues have been procedurally defaulted.

A petitioner may avoid a procedural default either by showing (1) cause for and prejudice from the default, or (2) that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Lynn, 365 F.3d at 1234 (quoting Murray v. Carrier, 477 U.S. 478, 496 (1986)).  Petitioner does not invoke the "actual innocence" exception.[3]  With respect to "cause and prejudice," "to show cause for procedural default, [a petitioner] must show that some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [the petitioner's] own conduct." Lynn,

---

[3]    Moreover, Petitioner has not pointed to any newly discovered evidence that would, in light of all the evidence, more likely than not prevent any reasonable juror from finding him guilty beyond a reasonable doubt. See Schlup v. Delo, 513 U.S. 298, 329 (1995).

365 F.3d at 1235 (citing <u>Smith v. Jones</u>, 256 F.3d 1135, 1145 (11th Cir. 2001)).

Petitioner must also show that "actual prejudice" resulted from the claim(s) not being

raised on direct appeal. <u>Lynn</u>, 365 F.3d at 1234 (citing <u>Bousley v. United States</u>, 523

U.S. 614, 622 (1998)). Constitutionally ineffective assistance of counsel may

constitute cause for a procedural default, <u>Brown v. United States</u>, 720 F.3d 1316,

1333 (11th Cir. 2013), but only if such a claim of ineffective assistance has merit,

<u>United States v. Nyhuis</u>, 211 F.3d 1340, 1344 (11th Cir. 2000). Petitioner does argue,

in issue (h), that appellate counsel was ineffective for not raising the issue of alleged

note-sharing by the jurors. However, because the Court determines that this

ineffective assistance claim lacks merit for the reasons set forth below, Petitioner has

not overcome the procedural default.

## V.   Discussion

Pursuant to Title 28, United States Code, Section 2255, a person in federal

custody may move to vacate, set aside, or correct his sentence. Section 2255 permits

such collateral challenges on four specific grounds: (1) the imposed sentence was in

violation of the Constitution or laws of the United States; (2) the court did not have

jurisdiction to impose the sentence; (3) the imposed sentence exceeded the maximum

authorized by law; or (4) the imposed sentence is otherwise subject to collateral

attack. 28 U.S.C §2255(a) (2008). Only jurisdictional claims, constitutional claims,

and claims of error that are so fundamental as to cause a complete miscarriage of

justice will warrant relief through collateral attack. <u>United States v. Addonizio</u>, 442

U.S. 178, 184-86 (1979). A petitioner's challenge to his sentence based on a Sixth

Amendment claim of ineffective assistance of counsel is normally considered in a collateral attack. United States v. Teague, 953 F.2d 1525, 1534 n. 11 (11th Cir. 1992).

To succeed on a claim of ineffective assistance of counsel, a petitioner must show both (1) that counsel's performance was deficient, and (2) that as a result of counsel's deficient performance, the petitioner suffered prejudice. Strickland v. Washington, 466 U.S. 668, 687 (1984). In determining whether counsel performed deficiently, the Court adheres to the standard of reasonably effective assistance. Weeks v. Jones, 26 F.3d 1030, 1036 (11th Cir. 1994). The petitioner must show, in light of all the circumstances, that counsel's performance fell outside the "wide range of professionally competent assistance." Id. To show that counsel's deficient performance prejudiced the defendant, the petitioner must show that there is a reasonable probability that, but for counsel's error, the result of the proceeding would have been different. Id. at 1036-37 (citing Strickland, 466 U.S. at 694). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694. In determining whether a petitioner has met the two prongs of deficient performance and prejudice, the Court considers the totality of the evidence. Id. at 695. However, because both prongs are necessary, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one." Id. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's]

ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").

### Claim A: Whether counsel gave ineffective assistance by preventing Petitioner from testifying at trial

Petitioner's first allegation is that he wanted to testify at trial in his behalf, but that counsel prevented him from doing so. (Motion to Vacate at 6-9). Petitioner claims that he expressed a desire to testify, but counsel decided not to call him because counsel was concerned that doing so would expose Petitioner to cross-examination about the nature of his prior convictions. (Id. at 7-8). Petitioner claims that had he testified, he would have testified to the following: (1) he never possessed the drugs, firearm, or ammunition seized from the mobile home; (2) he had no knowledge of the presence of drugs, a firearm, or ammunition in the residence; (3) he lacked keys to or control over the residence where police found the contraband; (4) he never sold crack cocaine to one Erik Berger, a witness for the prosecution; (5) he never possessed a firearm in Berger's presence, nor did he threaten Berger with a firearm; (6) although Petitioner kept certain items at the residence, he did not live there; and (7) Petitioner never fired a gun, as Berger had testified. (Id. at 8-9).

Defendants have a constitutional right to testify in their own behalf. Rock v. Arkansas, 483 U.S. 44, 51-53 (1987). That right is personal and fundamental; it cannot be waived by either the court or trial counsel, but only by the defendant. Teague, 953 F.2d at 1532. Indeed, the defendant is the one "who above all others may be in a position to meet the prosecution's case." Ferguson v. Georgia, 365 U.S. 570, 582 (1961). A petitioner's allegation that his attorneys prevented him from testifying

10

is analyzed as a claim of ineffective assistance of counsel.  <u>Teague</u>, 953 F.2d at 1534.

Counsel gives ineffective assistance with respect to the defendant's right to testify

where counsel "has refused to accept the defendant's decision to testify and refused

to call him to the stand, or where defense counsel never informed the defendant of

his right to testify and that the final decision belongs to the defendant alone."  <u>Gallego</u>

<u>v. United States</u>, 174 F.3d 1196, 1197 (11th Cir. 1999).  Petitioner does not claim that

counsel failed to advise him of the right to testify, but that counsel simply refused to

accept his request to do so.  (Motion to Vacate at 7).

While the decision to testify is the defendant's alone, an attorney does not

render ineffective assistance by strategically advising a defendant not to take the

stand.  <u>Teague</u>, 953 F.2d at 1533 ("[I]f defense counsel believes that it would be

unwise for the defendant to testify, counsel may, and indeed should, advise the client

in the strongest possible terms not to testify.");  <u>United States v. Willis</u>, 273 F.3d 592,

598 (5th Cir. 2001) (counsel could reasonably advise defendant not to testify out of

concern that he would be impeached with prior convictions under Fed. R. Evid. 609).

Even if the petitioner shows that counsel was deficient in preventing him from

testifying, he must still establish that he suffered prejudice as a result.  <u>See</u> <u>Teague</u>,

953 F.2d at 1534 (quoting the prejudice prong of <u>Strickland</u>, 466 U.S. at 687).

Taken together, the trial record and Petitioner's allegations demonstrate that

what happened is not that counsel prevented Petitioner from testifying against his

will, but that counsel advised Petitioner against doing so, Petitioner accepted such

advice, and that Petitioner now believes that the <u>advice</u> was deficient.  Absent from

Petitioner's Motion to Vacate is an allegation that his will was overborne, and absent from the trial record is any indication that Petitioner wished to testify.  Indeed, in reviewing its jury instructions, the Court stated that the instructions presumed Petitioner would not be testifying, and neither Petitioner nor counsel suggested otherwise.  (Crim. Doc. 93 at 169-71).  The Court mentioned to the parties that the decision to testify was between Petitioner and counsel, thus alerting Petitioner to the issue.  (Id. at 169).  Yet when the defense announced that it was resting without having called Petitioner to testify, Petitioner remained silent.  (Crim. Doc. 94 at 77-79).  Given the opportunity to speak before the Court at the sentencing hearing, Petitioner reiterated that he was innocent (reflecting he was not shy about addressing guilt-phase issues), but he did not complain that counsel prevented him from testifying at trial.  (See Crim. Doc. 96 at 12).  In his own Motion to Vacate, the complaint seems to be not that counsel overbore his will by not calling him to the stand, but that counsel misadvised him with respect to that decision.  (See Motion to Vacate at 7-8).  Petitioner states that counsel told him that if he testified, "the jury would not only get to hear the 'fact' of his prior drug convictions to support him being a convicted felon under § 922(g), but the Government would get to cross-examine the Petitioner as to the nature of the prior conviction as well."  (Id.).  However, Petitioner complains that the logic of counsel's advice was nullified by the fact that, before the prosecution rested, the Court admitted a pair of 2003 convictions for the sale or delivery of cocaine under Fed. R. Evid. 404(b), which the government wanted to introduce to prove intent and to rebut Petitioner's "mere presence" defense.  (See id.

at 8); (see also Crim. Doc. 93 at 4-15).  Because those two convictions came in anyway, Petitioner contends that it removed any reason for him not to testify.  Thus, the nature of Petitioner's claim seems to be that counsel deprived him of the right to testify by misadvising him with regard to that decision, not that counsel prevented him from doing so.  Thus, the Court construes Petitioner's claim as relating to counsel's advice, and evaluates it as such.

However, as stated, an attorney does not perform deficiently by strategically advising his or her client not to take the stand.  Teague, 953 F.2d at 1533; Willis, 273 F.3d at 598.  That is what occurred here judging from Petitioner's allegations: counsel advised Petitioner that it would be unwise to take the stand, because once he became a witness, the government could cross-examine him about his prior felony convictions.  See Fed. R. Evid. 609(a)(1)(B).

Such advice was not objectively unreasonable.  In addition to the pair of 2003 cocaine convictions that the Court admitted under Rule 404(b), Petitioner had six other felony convictions, including convictions for armed robbery, burglary, leaving the scene of an accident involving death or personal injury, dealing in stolen property, aggravated battery, and driving while license suspended or revoked as a felony habitual offender.  (See Presentence Investigation Report ["PSR"] at 1-2).  Because Petitioner did not testify, none of these other convictions came into play.  Counsel could reasonably have advised Petitioner that the government might impeach Petitioner's credibility based on the existence of these other prior convictions if he testified.  Additionally, the text of Rule 609(a)(1)(B) does not limit evidence of a

defendant-witness's prior felony convictions to the mere fact of their existence; the rule may also permit the nature of those convictions to be admitted.  This Court is not aware of any on-point authority, as of September 2009, that would have assured counsel that the nature of a defendant-witness's prior convictions could not be admitted under Rule 609.  In <u>United States v. Burston</u>, 159 F.3d 1328, 1335 (11th Cir. 1998), the Eleventh Circuit held that the nature of a <u>non-defendant</u> witness's prior convictions, rather than the mere fact of their existence, could be admitted under Rule 609(a)(1)(A).  Additionally, other circuits held that the nature of a prior felony conviction could be admitted to impeach a <u>defendant</u>-witness under Rule 609(a)(1)(B).  <u>See</u>, <u>e.g.</u> <u>United States v. Smith</u>, 454 F.3d 707, 716-17 (7th Cir. 2006); <u>United States v. Joost</u>, 133 F.3d 125, 129 (1st Cir. 1998).  Thus, counsel's concern that the government could impeach Petitioner under Rule 609(a)(1)(B) with the nature of his prior felony convictions was not unfounded.

Whether it would have actually been appropriate to admit the nature of Petitioner's prior convictions is a separate question that the Court does not reach,[4] but the relevant inquiry is whether counsel's advice was "outside the wide range of

---

[4]     For example, in order to impeach a defendant-witness's credibility through prior felony convictions that are less than ten years old, the prosecutor would have to show that the probative value of the evidence outweighs its prejudicial effect.  Fed. R. Evid. 609(a)(1)(B).  To impeach a defendant-witness's credibility through prior felony convictions that are more than ten years old (running from the later of the date of the conviction or release from custody), the prosecutor would have to show that the probative value "substantially outweighs" the prejudicial effect.  Fed. R. Evid. 609(b)(1).  These determinations require a fact-intensive inquiry that the Court need not undertake at this moment.  It is enough that counsel could have made a reasonable judgment that the risks posed by placing Petitioner on the stand were not worth doing so.

professionally competent assistance." <u>Chandler v. United States</u>, 218 F.3d 1305, 1314 (11th Cir. 2000) (quoting <u>Burger v. Kemp</u>, 107 S. Ct. 3114, 3126 (1987)).   Counsel could have reasonably feared that taking the stand would have opened Petitioner up to cross-examination about six other prior felony convictions on his record.

That the Court still admitted a pair of cocaine convictions under Rule 404(b) does not make counsel's advice less reasonable.  The Court's Rule 404(b) ruling only admitted evidence of two cocaine convictions from 2003.  Had Petitioner taken the stand, however, Rule 609(a)(1)(B) could potentially have allowed evidence that Petitioner had been convicted of six other felonies.  Accordingly, counsel's advice that testifying could expose Petitioner to impeachment about his prior convictions was not outside the wide range of professional assistance, and Petitioner has not demonstrated that counsel performed deficiently.  Because the Court has determined that counsel did not perform in an objectively unreasonable manner by advising Petitioner against testifying, it need not reach <u>Strickland</u>'s prejudice prong.

### Claim B:  Whether counsel gave ineffective assistance by not arguing that the firearm charge (Count Two) was improperly joined with the drug charge (Count One)

In his second ground, Petitioner argues that counsel performed deficiently by not contesting the initial joinder of the firearm charge and the cocaine charge.  (Doc. 1 at 9-19).  Counsel did move to sever the counts pursuant to Federal Rule of Criminal Procedure 14(a), a motion which this Court denied and the Eleventh Circuit affirmed. <u>See</u> <u>Brooks</u>, 426 F. App'x at 882-83.  What Petitioner argues, however, is that counsel

was ineffective because he did "not dispute that the initial joinder was proper" under Federal Rule of Criminal Procedure 8(a). Id. at 882.

Counsel's performance was neither deficient nor prejudicial in this regard. Counsel does not perform deficiently by not raising a meritless argument, Meeks v. Moore, 216 F.3d 951, 968 (11th Cir. 2000), nor is omitting a meritless argument prejudicial, United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992). As the Eleventh Circuit noted on direct appeal, initial joinder was proper because "[t]he firearm count was based on the same act or transaction as the drug charge, because the weapon and drugs were found at the same time and the same place as the drugs." Brooks, 426 F. App'x at 882 (citing Fed. R. Crim. P. 8(a)). See also United States v. Hersh, 297 F.3d 1233, 1241 (11th Cir. 2002) (the Eleventh Circuit construes Rule 8(a) broadly in favor of initial joinder). It would therefore have been meritless for counsel to have challenged the initial joinder. Accordingly, Petitioner is not entitled to relief on Claim B.

### Claim C: Whether counsel was ineffective for not seeking an expedited ruling on Rule 404(b) evidence

Petitioner asserts that counsel performed deficiently by not obtaining an expedited ruling with regard to whether the Court would admit evidence of a pair of 2003 convictions for the sale or delivery of cocaine, pursuant to Fed. R. Evid. 404(b). (Doc. 1 at 19-24).

Before trial, Petitioner filed a motion in limine to exclude the prior convictions (Crim. Doc. 55), which the Court temporarily granted "to the extent that the government must move to introduce evidence of defendant's 2003 cocaine convictions

outside the presence of the jury and may not refer to it before the jury without the express authority of the Court." (Crim. Doc. 64). During the trial, the Court decided it would admit the 2003 cocaine convictions and extensively explained its reasoning. (See Crim. Doc. 93 at 4-15). In what Petitioner thinks is his smoking gun, counsel stated that his client was prejudiced by a mid-trial ruling, because had counsel known earlier that the cocaine convictions would be admitted, he would have constructed a different defense. (Id. at 18-19). The Court was skeptical that the defense would have been materially different. (Id. at 19). However, the Court stated that had counsel urged the Court that it needed to rule promptly because the defense strategy hinged on the 404(b) ruling, it "might have bitten the bullet" and ruled before it was prepared to, but counsel had not made such an argument. (Id. at 19-20) (emphasis added). The Court noted, though, that it was for the Petitioner's benefit that it delayed ruling on the 404(b) issue until it had heard more evidence. (Id.).

Petitioner construes counsel's statement – i.e., that he would have adopted a different strategy had he known the Court would admit the prior convictions – as an admission that a better defense existed. (Doc. 1 at 19-24). Petitioner does not know what that alternative defense was, but he insists that it was superior to the one pursued at trial, and that counsel was deficient for not pursuing it. Petitioner argues that counsel was either ineffective for not pursuing this alternative defense, or for not making the Court rule sooner on 404(b) evidence.

Petitioner has failed to establish deficient performance. First, Petitioner misinterprets counsel's statement that he would have pursued a different strategy,

had he known the Court would admit the prior cocaine convictions, as an admission that an objectively better defense existed.   That is not what counsel said.   Counsel simply stated that his strategy might have been different _if_ he had known that the Court would admit the 2003 cocaine convictions under Rule 404(b).   All that means is that counsel considered one strategy to be better if the Court <u>did not</u> admit the prior convictions, and that another strategy was better if the Court <u>did</u> admit the prior convictions, and counsel picked the strategy that assumed the prior convictions would not be admitted.

That attorneys must develop strategies around uncertainty informs a central premise of ineffective assistance review: courts may not use the distorting effects of hindsight to second-guess counsel's performance.   <u>Chandler</u>, 218 F.3d at 1316-17 (citing <u>Strickland</u>, 466 U.S. at 689).   Instead, courts must attempt to reconstruct the circumstances as they existed at the time, and evaluate counsel's choices within that context.   <u>Chandler</u>, 218 F.3d at 1316.   Counsel cannot be faulted, for example, for not predicting how a court will rule.   <u>See</u> <u>United States v. Ardley</u>, 273 F.3d 991, 993 (11th Cir. 2001) (collecting cases holding that counsel is not ineffective for not foreseeing a change in the law, even where a decision appears in hindsight to have been "a sure fire winner").   By the same token, counsel cannot be faulted for not predicting the Court's 404(b) ruling, and constructing a trial strategy around the assumption that the Court would not admit prior cocaine convictions.

Petitioner tries to get around that problem by arguing that counsel should have sought an expedited ruling on 404(b) evidence so that he <u>could</u> pick the best defense

strategy.  However, counsel cannot simply tell the Court when to rule.  Although the Court stated that it "<u>might</u> have bitten the bullet" and ruled before it was prepared to do so had counsel insisted that it was important to his choice of strategy, there is no guarantee that the Court would actually have ruled before seeing any of the trial evidence (which the Court believed was necessary in order to ground its 404(b) decision).  Moreover, counsel could have reasonably decided that giving the Court additional time to consider its 404(b) ruling increased the likelihood that it would exclude the prior cocaine convictions, especially if counsel believed he had the better argument.  Accordingly, Petitioner's allegations fail to show that counsel performed deficiently by not seeking to compel an earlier ruling on 404(b) evidence.

Additionally, Petitioner has failed to establish prejudice.  There is not a reasonable likelihood that the jury would have acquitted Petitioner even had counsel obtained an earlier 404(b) ruling and adjusted his strategy.  Counsel explained on the record that had he known the prior cocaine convictions would be admitted, he would have tried to soften their damage by explaining how Petitioner had behaved in prison or how he has changed since those convictions, such as by introducing evidence of whether Petitioner took drug classes while incarcerated.  (<u>See</u> Crim. Doc. 93 at 18).  The Court has already opined that this would not amount to a materially different defense, if such evidence was even admissible.  (<u>Id.</u> at 19).  Indeed, the alternative strategy discussed by counsel does nothing to undermine the evidence against Petitioner on the <u>firearm</u> charge for which he was convicted.  Accordingly, Petitioner has failed to show that had counsel sought an expedited ruling on 404(b) evidence

that there is a reasonable probability the jury would have acquitted him of the firearm charge.  Petitioner is therefore not entitled to relief on Claim C.

### Claim E:  Whether counsel gave ineffective assistance by not reminding the Court to admonish the jurors against sharing notes

During the trial, one of Petitioner's two attorneys alerted the Court that two jurors appeared to be sharing notes with each other, and requested that the Court remind the jurors that they may not share notes.  (Crim. Doc. 93 at 72).  The Court agreed to remind the jurors, but did not immediately do so.  The following day, however, the Court did remind the jurors that notepads are merely aids to their memory, that their memories of the evidence must control, and that they should not be "passing their notes around to each other."  (Crim. Doc. 94 at 99).

Petitioner claims that when the Court did not immediately admonish the jurors not to share notes, counsel gave ineffective assistance by not reminding the Court to issue the instruction.  Petitioner does not know the content of the notes that the jurors purportedly shared, how the note-sharing might have affected the verdict, or whether it did actually affect the verdict.  However, Petitioner claims that prejudice should be presumed.  (Doc. 1 at 28).

Contrary to Petitioner's suggestion, the Court may not presume prejudice based only on counsel's failure to remind the Court to re-instruct the jurors on note-sharing.  The category of ineffective assistance claims where prejudice may be presumed is narrow.  See Purvis v. Crosby, 451 F.3d 734, 740 (11th Cir. 2006) ("The Supreme Court in Strickland instructed us that in all but three exceptional circumstances prejudice must be shown before an ineffective assistance of counsel

claim merits relief.").   Prejudice is presumed where (1) the defendant has been actually and completely denied the right to counsel at a critical stage, (2) the defendant has been constructively denied the right to counsel altogether, as where counsel is present but he totally fails to subject the prosecution's case to meaningful adversarial testing, and (3) such circumstances exist that, although counsel is available to assist the defendant, the likelihood that any lawyer, even a competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate.   Strickland, 466 U.S. at 692; United States v. Cronic, 466 U.S. 648, 658-59 (1984).   Prejudice may also be presumed where defense counsel labored under a conflict of interest, provided that "the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.'"   Strickland, 466 U.S. at 692 (quoting Cuyler v. Sullivan, 446 U.S. 335, 350, 348 (1980)).   None of these categories covers the situation here, where counsel merely did not remind the Court to immediately re-instruct the jurors not to share notes.[5]

---

[5]      Nor is a presumption of prejudice appropriate on the underlying issue of note-sharing.   With regard to inappropriate jury communications, a rebuttable presumption of prejudice arises "the moment the defendant establishes that 'extrinsic contact with the jury in fact occurred.'"   United States v. Martinez, 14 F.3d 543, 550 (11th Cir. 1994) (quoting United States v. Caporale, 806 F.2d 1487, 1503 (11th Cir.1986)) (emphasis added).   However, prejudice is not presumed from intrinsic contact among the jurors, as where two jurors share notes.   See Fields v. Brown, 431 F.3d 1186, 1209 (9th Cir. 2005) on reh'g en banc, 503 F.3d 755 (9th Cir. 2007) ("Sharing notes is not constitutionally infirm if sharing memory isn't.");   United States v. Balsam, 203 F.3d 72, 86 (1st Cir. 2000) (jurors sharing notes in open court does "not raise the same specter of prejudice as improper outside influences upon the jury").   Accordingly, the Court does not presume that Petitioner was prejudiced because two jurors shared their notes with each other.

Thus, Petitioner is not relieved from the requirement to adequately plead prejudice.  Petitioner must show that there is a reasonable probability that, had counsel reminded the Court to re-instruct the jurors not to share notes, that the jurors would have acquitted him of the firearm charge, and that it still would have deadlocked or acquitted him of the drug charge.  However, a petitioner is not entitled to post-conviction relief, or even an evidentiary hearing, "when his claims are merely conclusory allegations unsupported by specifics[.]" Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (emphasis in original) (internal citations and quotations omitted).  A district court need not hold an evidentiary hearing if the petitioner's allegations are "patently frivolous," "based on unsupported generalizations," or "affirmatively contradicted by the record." Holmes v. United States, 876 F.2d 1545, 1552 (11th Cir.1989).

Petitioner's allegation that he was prejudiced because counsel did not remind the Court to re-instruct the jurors about sharing notes is an unsupported generalization.  There is no indication whatsoever that the two jurors pre-decided the case against Petitioner as a result of a single episode of swapping notes.  The content of the jurors' notes is unknown, as is the effect of the notes on the verdict, which even Petitioner himself admits.  (Doc. 1 at 28) ("Looking back now, there is no way to determine if the early note [s]haring caused the guilty verdict.").  Additionally, when defense counsel brought the issue to the Court's attention, he observed that the jurors were sharing notes during what he believed to be a strong cross-examination of a government witness, and that perhaps "they were pointing out that maybe I was

right.  And maybe it's a good thing.  But I don't want to bring it to their attention…
because I don't want to be the tattletale." (Doc. 93 at 72).[6]  Petitioner also does not
identify any other instances where jurors shared notes, so the fact that the Court did
not promptly reinstruct the jurors on note-sharing appears to have been
inconsequential.  Finally, the Court did reinstruct the jurors, before they retired to
deliberate, that they must rely on their memories and that they should not share
notes.  (See Crim. Doc. 94 at 99).  Thus, Petitioner's claim that he suffered prejudice
from counsel's failure to immediately remind the Court to reissue the instruction is
purely speculative.  Petitioner has not pointed to anything suggesting that there is a
reasonable likelihood the jury would have acquitted Petitioner had the Court, at
counsel's urging, promptly reinstructed the jurors not to share notes.  Therefore,
Petitioner is not entitled to relief on Claim E.

### Claim H:  Whether appellate counsel was ineffective for not briefing the issue of whether the Court erred in not immediately admonishing the jurors about sharing notes

Petitioner also claims that appellate counsel was ineffective for not arguing on
direct appeal that the Court abused its discretion by not immediately reminding the
jurors not to share notes.  (Doc. 1 at 31-33).

For the reasons stated under Claim E, however, this claim also lacks merit.
Although the Court did not immediately reinstruct the jurors on sharing notes, it did
reinstruct them the following day not to do so, before they retired to deliberate.

---

[6]     This comment also reflects that counsel had a strategic reason for not jumping
up to remind the Court to promptly admonish the jurors against sharing notes.

(Crim. Doc. 94 at 99).   Appellate counsel would have had to show that the Court abused its discretion in so instructing the jurors.  See United States v. Dominguez, 226 F.3d 1235, 1246 (11th Cir. 2000).  Because the Court did reinstruct the jurors the next day, there is not a reasonable likelihood that Petitioner would have won relief on appeal by raising this claim.[7]  Accordingly, Claim H is due to be denied.[8]

### Claims I and M: Whether counsel was ineffective for allowing a former correctional officer, the wife of an FBI agent, the son of a former FBI agent, or other individuals with a connection to law enforcement to be empaneled as jurors

Petitioner contends that counsel was ineffective for allowing (a) a former correctional officer, (b) the wife of an FBI agent, and (c) the son of a former FBI[9] agent to be selected as jurors, resulting in a biased jury panel.  (Doc. 1 at 33-36).  Petitioner also contends that counsel allowed other venire members with a bias toward law enforcement to become jurors.  (See Doc. 1 at 40-41; Doc. 21 at 27-31).

---

[7]     Appellate counsel could also have reasonably decided not to brief the issue. "[T]o second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every 'colorable' claim suggested by a client would disserve the very goal of vigorous and effective advocacy[.]"  Jones v. Barnes, 463 U.S. 745, 754 (1983).  Rather, "[e]xperienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues."  Id. at 751-52.

[8]     Because counsel did not render ineffective assistance by not raising the note-sharing issue on appeal, Petitioner has not established "cause and prejudice" to excuse procedurally defaulting Claims F and G.  See supra at 7-8.

[9]     None of the prospective jurors had relatives in the FBI, but some did have relatives who worked for the Florida Department of Law Enforcement (FDLE) or the Jacksonville Sheriff's Office (JSO), which is likely what Petitioner is referring to.

A criminal defendant has a right to an impartial jury, and a prospective juror who lacks impartiality must be excused for cause. See Ross v. Oklahoma, 487 U.S. 81, 85–86 (1988).

> To exclude a prospective juror for cause, a party "must demonstrate that the juror in question exhibited <u>actual</u> bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed." United States v. Chandler, 996 F.2d 1073, 1102 (11th Cir.1993) (emphasis added); see also Smith v. Phillips, 455 U.S. 209, 215, 102 S.Ct. 940, 945, 71 L.Ed.2d 78 (1982). The burden is on the challenger to show the prospective juror has actual bias, so as to raise the presumption of partiality. Irvin v. Dowd, 366 U.S. 717, 723, 81 S.Ct. 1639, 1643, 6 L.Ed.2d 751 (1961).

Fennell v. Sec'y, Fla. Dep't of Corrections, 582 F. App'x 828, 832 (11th Cir. 2014). To show that counsel gave ineffective assistance in jury selection, the Petitioner must show, as usual, that counsel's performance fell below the wide range of professional assistance, and that there is a reasonable probability that the proceedings would have turned out differently but for counsel's performance. Owen v. Florida Dep't of Corrections, 686 F.3d 1181, 1195 (11th Cir. 2012).

The transcript of jury selection (Crim. Doc. 126, Unredacted Sealed Transcript; Crim. Doc. 127, Redacted Published Transcript) reflects that no venire member resembling Petitioner's description made it onto the jury panel. During voir dire, a number of venire members did identify themselves as having some connection to the government or law enforcement. However, all except one were excluded from the jury. Two individuals were judicial assistants for state court judges, and both knew some of the law enforcement witnesses in this case. (Crim. Docs. 126, 127 at 10-14, 15-16). Defense counsel had both prospective jurors struck for cause. (Id. at 78, 102).

One individual's son was a homicide detective, and stated that she might give more credit to a law enforcement officer's testimony (id. at 17-18); defense counsel had her struck for cause as well (id. at 79-80). Another individual had a brother-in-law who was a retired JSO officer and a brother who was a St. Johns County correctional officer (id. at 18-19, 23); defense counsel used a peremptory strike on that individual (id. at 106). One individual's son was a correctional officer and had a best friend who was retired from the Palm Beach County Sheriff's Office (id. at 21-22); counsel exercised a peremptory strike on him as well (id. at 106). Another woman's husband and two sons were correctional officers, and she indicated she would credit a law enforcement officer's testimony more (id. at 23); counsel had her struck for cause (id. at 80-81). One gentleman's sister and nephew worked for a federal detention facility (id. at 24), and counsel peremptorily struck that individual after unsuccessfully moving to strike him for cause (see id. at 104, 106). Finally, one venire member was a former investigator for Florida's Department of Children and Families (id. at 26) and another used to work for "HRS" (Florida's Department of Health and Rehabilitative Services) (id. at 25-26), but neither were among the fourteen individuals who wound up on the jury panel (see id. at 110).

Only one individual with any relationship to law enforcement ended up on the jury, and she had only a remote connection: her cousin was a retired police officer from New York. (See id. at 22, 110). However, that juror affirmed that she could be fair and impartial. (Id. at 22). As such, there is no basis for concluding that this juror

was actually biased, either because she admitted bias or because her connection to the case was so close that bias should be presumed.  See Chandler, 996 F.2d at 1102.

The record does not support Petitioner's claim that counsel performed deficiently by allowing jurors to be empaneled who were biased on account of a relationship with law enforcement.  With respect to the jurors who were empaneled, there is no indication, and nothing more than unsupported speculation, that any harbored bias against Petitioner.  Accordingly, Petitioner is not entitled to relief on Claims I and M.  See Holmes, 876 F.2d at 1552-53 (unsupported generalizations do not require a hearing); Tejada, 941 F.2d at 1559 (a hearing is not required on conclusory allegations unsupported by specifics or contentions that are wholly unsupported by the record).

### Claim K:  Whether counsel was ineffective for not eliciting testimony from Nathaniel Armstrong and Sonya Baker that the firearm belonged to Petitioner's son

In Claim K, Petitioner contends that counsel performed ineffectively at trial by not eliciting certain testimony from two defense witnesses, Nathaniel Armstrong and Sonya Baker.  (Doc. 1 at 37-38).  Although counsel called both witnesses at trial, Petitioner complains that counsel was ineffective for not bringing forth testimony that they allegedly knew that Petitioner's son owned or possessed the firearm.  Petitioner submitted affidavits from Armstrong and Baker, who both aver that they informed defense counsel that they knew Petitioner's son, Keith Laron Brooks, Jr., was the owner of the firearm in this case, that they would have testified to this fact, and that counsel failed to elicit such testimony.  (See Doc. 4-2, Affidavit of Sonya

Baker; Doc. 4-3, Affidavit of Nathaniel Armstrong).   Specifically, Armstrong and Baker would have testified that they had often seen Petitioner's son with the gun, that Petitioner's son "would always try to fix the gun," and that the son "always said he needed to fix the gun or have it fixed." (Doc. 4-2 at 1).  Petitioner believes that had the jury heard this testimony, it would have acquitted him of possession of the firearm.

While defense counsel did call Armstrong and Baker to testify at trial, the record confirms that counsel did not elicit testimony from them that they had allegedly seen Petitioner's son carrying or discussing the firearm.  (See Crim. Doc. 94 at 18-40, 42-77).  The defense strategy was evidently to portray Petitioner as unaware of the gun's existence in the first place.  Counsel suggested to the jury in the opening statement that Petitioner was entirely unaware of the gun's whereabouts because it was "hidden."  (See Crim. Doc. 120 at 21-22, 33).  To support that theory, counsel elicited testimony from several defense witnesses, including Armstrong and Baker, that they had never seen Petitioner with the firearm (Crim. Doc. 94 at 31-32, 54), and that Petitioner did not live at the residence where the firearm was found (id. at 29, 33-34, 44).  Counsel also elicited testimony that a number of other people used or occupied the back room where police found the gun (id. at 22, 53-54; see also Crim. Doc. 93 at 76-80, 129-30, 137-38, 140-41, 144-48), so as to suggest that the gun could have belonged to someone else.

Problematically however, Armstrong's trial testimony contradicts the testimony proffered in his affidavit.  (Compare Crim. Doc. 94 at 31-32 with Doc. 4-3

at 2).  At trial, Armstrong not only denied ever seeing Petitioner with the gun, but he

also testified as follows:

> [COUNSEL]:      Let me ask you to also identify what has been identified as Exhibit 14R.  Do you recognize that gun?
>
> [ARMSTRONG]:   No, sir.

(Crim. Doc. 94 at 31-32).   In the Affidavit submitted by Petitioner, however,

Armstrong states the following:

> That I recall, on several occasions I have witnessed Keith Brooks, Jr., the son of the petitioner, with the firearm the petitioner was convicted of.  I know that the gun I saw Keith Brooks, Jr., with was the gun the petitioner was charged with because I saw the police take the gun from the residence on the day the petitioner, Keith Brooks, was arrested and charged for the gun.  I was at the residence the day the search occurred.
>
> I recall seeing Keith Brooks, Jr., with the same gun that was taken from the residence the night before the search.  I have also seen him several times working on the gun at the same house.  I also know that the gun belonged to Keith Brooks, Jr., because he would always have it, saying, "I need to fix my gun."

(Doc. 4-3 at 2).  So whereas Armstrong testified at trial that he did not recognize the

gun, he now avers that he was familiar with the firearm because he had seen it on

several occasions in the possession of Petitioner's son.   Thus, the credibility of

Armstrong's proffered testimony is suspect.

The Court can credit counsel's decision not to elicit the testimony proffered by

Armstrong and Baker as reasonable and strategic, even putting aside concerns about

the credibility of the proffered testimony.  Like the decision on which witnesses to

call, the decision on what testimony to elicit from witnesses is a quintessentially

strategic one.  Cf. Evans v. Sec'y, Fla. Dep't of Corr., 699 F.3d 1249, 1268 (11th Cir.

2012) ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."). It was plain from the trial that counsel's strategy was to portray Petitioner as entirely ignorant of the firearm's existence, and therefore that he could not have actually or constructively possessed the firearm. A total-ignorance defense is reasonable, because a defendant "must, in fact, know of the firearm's existence in order to exercise dominion and control over it." United States v. Pedro, 999 F.2d 497, 500 (11th Cir. 1993). For Armstrong and Baker to testify that they knew about the firearm, and that Petitioner's adolescent son[10] owned, possessed, or otherwise used it, would be to undermine the total-ignorance defense. It would be difficult for Petitioner to argue that he was unaware of the gun's existence if two other people, who were less closely related to the son than Petitioner was, testified that they knew Petitioner's own son was using or carrying the weapon. Rather, had the jury heard Armstrong and Baker testify that they knew Petitioner's son possessed a gun, the jury could have inferred that Petitioner also knew perfectly well about the gun, and that his total-ignorance defense was untruthful.

Moreover, introducing testimony that Petitioner's son owned and used the firearm would not have necessarily refuted the government's allegation that Petitioner possessed the firearm. To the contrary, it might even have aided the government in proving constructive possession. As a matter of law, the fact that

---

[10]     Petitioner's son was 16 to 18 years old at the time. (Crim. Doc. 94 at 53).

another person possessed a gun does not necessarily mean that the defendant did not have possession and control.  United States v. Gunn, 369 F.3d 1229, 1235-36 (11th Cir. 2004).    "Possession [of a firearm] may be actual or constructive, joint or sole." Id. at 1234 (citing United States v. Crawford, 906 F.2d 1531, 1535 (11th Cir. 1990)). Here, the prosecution's strategy was to prove constructive possession anyway, which it argued could be proven by showing that Petitioner "ha[d] both the power and the intention to later take control over something," or that Petitioner exercised joint possession.  (See Crim. Doc. 121 at 6-7, 13).  Had Armstrong and Baker testified that they knew Petitioner's son owned or possessed the firearm, it would have improved the government's case for constructive or joint possession.  First, if Armstrong and Baker knew that Petitioner's son owned the gun, the jurors could certainly have concluded that Petitioner also knew well that his son owned the gun, and that he was not ignorant of its existence.  Furthermore, the jurors could have concluded that Petitioner had the power to control and direct the actions of his teenage son, which would include the power to exercise control over the firearm.  Accordingly, had counsel elicited the testimony Petitioner alleges he should have, it might well have strengthened, rather than weakened, the government's case for constructive and joint possession of the firearm.

Therefore, counsel could have made a reasonable, strategic decision not to elicit testimony from Armstrong and Baker that they had often seen Petitioner's son carrying or talking about the firearm.  Because the Court finds that counsel did not

perform deficiently, it need not move on to <u>Strickland</u>'s prejudice prong.  Petitioner is not entitled to relief on Claim K.

> **Claim L:  Whether counsel was ineffective for not objecting to (1) a magistrate judge's order denying motions to compel the identity of a confidential informant, and (2) the Report and Recommendation to deny the Motion to Suppress**

Before trial, Petitioner moved to suppress the evidence that law enforcement gathered from the mobile home where he was arrested, which included cocaine, drug paraphernalia, and the firearm.  (<u>See</u> Crim. Doc. 18).  Police had a search warrant, but Petitioner alleged there were defects in the warrant, the warrant affidavit, and the execution of the warrant, and that probable cause did not exist to justify the warrant.  Petitioner argued, among other things, that police searched the wrong residence, where the warrant authorized a search of 10691 McLaurin Road East, but the unnumbered mobile home that police actually searched was 10881 McLaurin Road East.  Petitioner also argued that in order to establish probable cause for the warrant, police recklessly relied on information given by an unreliable confidential informant ("CI") (<u>id.</u> at 5-6), whose identity Petitioner moved to compel (<u>see</u> Crim. Docs. 19 and 29).  A United States Magistrate Judge denied the motions to compel in a reasoned order (Crim. Doc. 44), and in a comprehensive Report and Recommendation, recommended that the Court deny the motion to suppress (Crim. Doc. 43).  Petitioner's counsel did not object to the Report and Recommendation, nor did he ask the Court to overturn the order denying the motions to compel.  Accordingly, the Court adopted the Report and Recommendation and denied the motion to suppress.  (Crim. Doc. 64).  On direct review, Petitioner (who was

represented by the same counsel) attempted to appeal the denial of the motion to suppress and the motions to compel, but the Eleventh Circuit did not reach the merits.  Instead, the court held that Petitioner had waived appellate review of these claims by not appealing first to the district judge.  See Brooks, 426 F. App'x at 883.

Petitioner argues that counsel's failure to object to the denial of the motions to compel and the Report and Recommendation constituted deficient performance.  (Doc. 1 at 39).  In order to establish prejudice, Petitioner incorporates the arguments counsel attempted to raise on direct appeal (Doc. 1 at 39-40; Docs. 4-4, 4-5), which he believes show that he had meritorious objections to the Magistrate Judge's order and Report and Recommendation.

Because a petitioner must satisfy both Strickland's performance prong and its prejudice prong, "there is no reason for a court… to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one."  466 U.S. at 697; see also Wellington v. Moore, 314 F.3d 1256, 1261 n. 1 (11th Cir. 2002) ("We need not discuss the performance deficiency component of [petitioner's] ineffective assistance claim because failure to satisfy the prejudice component is dispositive.").  The Court does not reach whether counsel performed deficiently in not objecting to the Report and Recommendation or the order denying the motions to compel.  The Court is satisfied that Petitioner did not suffer prejudice because the Magistrate Judge's Report and Recommendation, adopted by the Court, and order were correct, and therefore, there is not a reasonable likelihood

that the proceedings would have turned out differently had counsel preserved the issues for appeal.

### 1. The Magistrate Judge's Order Denying the Motions to Compel

Generally, the government enjoys a privilege to withhold the identity of CI's. Roviaro v. United States, 353 U.S. 53, 59 (1957).  However, the government's privilege yields to the requirements of fairness where "the disclosure of the informant's identity, or of the contents of his communication, is relevant and helpful to the defense of an accused, or is essential to a fair determination of his cause." Id. at 60-61.  The Court engages in a balancing test when determining whether the privilege should yield to the needs of the defendant.  United States v. Gutierrez, 931 F.2d 1482, 1491 (11th Cir. 1991).  That balancing test has come to focus on three factors:  (1) "the extent of the informant's participation in the criminal activity"; (2) "the directness of the relationship between defendant's asserted defense and the probable testimony of the informant"; and (3) "the government's interest in nondisclosure."  Id. (quoting United States v. Tenorio-Angel, 756 F.2d 1505, 1509 (11th Cir. 1985)).

The motions to compel the identity of the confidential informant were correctly denied.  First, the CI was not a participant in any of the charged criminal activity. See United States v. Mendoza-Salgado, 964 F.2d 993, 1000-01 (10th Cir. 1982) (courts have consistently held that no disclosure is required where the informer was not a participant in the illegal transaction).  Although the CI engaged in an undercover drug buy from Petitioner, this was not a transaction for which Petitioner was charged. As the Magistrate Judge pointed out, Petitioner was charged with possession of a

firearm by a convicted felon and possession of cocaine base with intent to distribute, but <u>not</u> for the sale of cocaine base to the CI.  (Crim. Doc. 43 at 6-7).  Second, Petitioner had not shown a direct relationship between the probable testimony of the CI and any asserted defenses.  (<u>Id.</u> at 7).  Third, the government had a strong interest in protecting the CI's identity and the integrity of ongoing investigations because the CI was still active in an undercover capacity.  (Crim. Doc. 21 at 2; Crim. Doc. 31 at 2; Crim. Doc. 44 at 9).  Additionally, because there was no indication that the CI could offer exculpatory evidence, and because the government stated it would not call the CI as a witness, neither <u>Brady v. Maryland</u>,[11] the Sixth Amendment's Confrontation Clause, nor due process required the United States to disclose the CI's identity.  (Crim. Doc. 44 at 7-9).  <u>See also</u> <u>McCray v. Illinois</u>, 386 U.S. 300, 309-14 (1967) (finding no support for the argument that either the Sixth Amendment or the Fourteenth Amendment's due process clause required the disclosure of a CI's identity at a suppression hearing on the issue of whether there was probable cause for a warrantless search).

Moreover, a court's denial of a motion to compel a CI's identity is reviewed for abuse of discretion.  <u>Brooks</u>, 426 F. App'x at 883 (citing <u>Gutierrez</u>, 931 F.2d at 1490).  Given the aforementioned analysis, there is not a reasonable probability that, had counsel preserved the issue for direct review, that Petitioner would have won relief on appeal.

---

[11]     373 U.S. 83 (1963).

## 2.  The Report and Recommendation on the Motion to Suppress

Likewise, the Report and Recommendation (Crim. Doc. 43) correctly recommended denying the motion to suppress, an opinion this Court expressed when it adopted the Report (see Crim. Doc. 64).

On direct appeal, Petitioner would have argued that the search warrant failed to describe with sufficient particularity the place to be searched because the warrant listed the wrong address and did not specifically describe Petitioner.  (See Doc. 4-4 at 2-4).  As the Report noted, "[a]n erroneous description of the premises to be searched is not necessarily fatal to the validity of a warrant."  (Crim. Doc. 43 at 18) (quoting United States v. Weinstein, 762 F.2d 1522, 1532 (11th Cir. 1985)).  Rather, the warrant "need only describe the place to be searched with sufficient particularity to direct the searcher, to confine his examination to the place described, and to advise those being searched of his authority."  Weinstein, 762 F.2d at 1532.  Although the warrant listed the wrong address number, it was obvious that the residence searched otherwise matched the one described in the warrant.  The warrant affidavit particularly described the premises to be searched as

> a single-story, single family dwelling… of manufactured construction, painted white and trimmed in tan.  The premises has a wooden deck built onto the front of the residence.  The premises to be searched is the first structure east of McLaurin Road, on the north side of McLaurin Road East, and faces south.  There were no visible numerals affixed to the residence indicating the numerical address.

(Crim. Doc. 28-2, Warrant Affidavit; Crim. Doc. 43 at 5).  The home that police searched matched this description.  (See Crim. Doc. 39 at 35-36; Crim. Doc. 43 at 18-

20).   Accordingly, the Report correctly denied suppression on this ground, and Petitioner was not prejudiced by it not being preserved for appeal.

Second, Petitioner would have argued on direct appeal that "the affidavit lacked probable cause where it lacked sufficient information to attest to the reliability and veracity of the confidential informant and it contained intentionally or recklessly false statements, omissions and representations."   (See Doc. 4-4 at 4-7).   As the Magistrate Judge noted in the Report, a "properly executed controlled buy… is sufficient, standing alone, to establish probable cause" for a search warrant.   (Crim. Doc. 43 at 12) (quoting United States v. Roundtree, 299 F. App'x 905, 907 (11th Cir. 2008) (unpublished)).   The CI made a controlled buy of crack cocaine from Petitioner, after having been cleared by a law enforcement officer of possessing drugs before the purchase.   (See Crim. Doc. 43 at 12; Crim. Doc. 28-2 at 2).   Thus, a properly conducted controlled buy supplied probable cause for the warrant.   Next, the warrant affidavit had to provide enough information to enable the judicial officer issuing the warrant to independently determine the reliability of the CI's information.   United States v. Foree, 43 F.3d 1572, 1576 (11th Cir. 1995).   The affidavit met this standard.   The successful controlled buy, which was described in the affidavit, gave the CI credibility, and the affidavit further stated that the CI had provided reliable information on eight occasions in the preceding two years.   (See Crim. Doc. 43 at 12-13; Crim. Doc. 28-2 at 2).   Thus, the affidavit would have allowed a neutral and detached magistrate to determine that the CI's information was reliable.   Moreover, Petitioner had utterly failed to show that the officer who wrote the affidavit made "a false statement

37

knowingly and intentionally, or with reckless disregard for the truth." <u>Franks v. Delaware</u>, 438 U.S. 154, 156 (1978); (<u>accord</u> Crim. Doc. 43 at 13-14). Thus, the Report and Recommendation correctly recommended denying the Motion to Suppress on this ground.

Third, Petitioner would have argued on direct appeal that, assuming the warrant was defective, the "good faith exception" to the exclusionary rule discussed in <u>Leon v. United States</u>, 468 U.S. 897, 920-24 (1984), would not have applied.  (<u>See</u> Doc. 4-4 at 7-9; Doc. 4-5 at 2).  Because there was no Fourth Amendment violation in the first instance, however, the "good faith exception" would not have come into play.

The Magistrate Judge's Report and Recommendation, and this Court's order adopting it, correctly determined that Petitioner was not entitled to suppression of the evidence.  Regardless of whether counsel should have objected to the Report, there is not a reasonable probability that the evidence would have been suppressed if counsel had preserved the issue for appellate review.  Accordingly, Petitioner has not satisfied <u>Strickland</u>'s prejudice prong, and he is not entitled to relief on Claim L.

## VI.   Petitioner's Motion for Reconsideration (Doc. 42)

On December 13, 2013, Petitioner moved to supplement his Motion to Vacate to add five new claims based on decisions by the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the Florida Supreme Court in <u>Descamps v. United States</u>, 133 S. Ct. 2276 (2013), <u>Donawa v. U.S. Att'y General</u>, 735 F.3d 1275 (11th Cir. 2013), and <u>State v. Adkins</u>, 96 So. 3d 412 (Fla. 2012), respectively.  (Doc. 24, Motion to Supplement).  A Magistrate Judge denied that motion on July 25, 2014.

(Doc. 41).   On July 14, 2015, almost a year after the order, Petitioner moved for reconsideration.  (Doc. 42).

A party may seek reconsideration of a non-final order under Federal Rule of Civil Procedure 60(b).  Broadway v. Norris, 193 F.3d 987, 989 (8th Cir. 1999) (where a motion seeks reconsideration of a nonfinal order, it is properly characterized as a motion brought under Rule 60(b)); Goffney v. Sauceda, 444 F. App'x 69, 70 (5th Cir. 2011) ("Rule 60(b)… contemplates motions seeking relief[ ] from nonfinal orders."). However, a "motion under Rule 60(b) must be made within a reasonable time," and in certain circumstances that do not apply here, "no more than a year after the entry of the judgment or order or the date of the proceeding."   Fed. R. Civ. P. 60(c)(1) (emphasis added).  Waiting nearly a full year to move for reconsideration of an order denying a motion to supplement is not moving "within a reasonable time," as Rule 60 requires.  Accordingly, the Motion for Reconsideration (Doc. 42) is due to be denied.

### VII.   Petitioner's Motion to Supplement (Doc. 43)

On or about August 10, 2015, Petitioner filed a "Motion to Amend Reconsideration Motion with Supplement Authority," in which Petitioner contends that the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015), makes his sentence as an armed career criminal unconstitutional.  (Doc. 43, Johnson Motion to Supplement).  The Court does not construe this filing as a motion to amend the motion for reconsideration (Doc. 42), but as a motion to supplement his Motion to Vacate (Doc. 1) with the Johnson claim.  Moreover, the Court considers this claim timely filed pursuant to 28 U.S.C. § 2255(f)(3), because the Supreme Court decided

Johnson less than a year before Petitioner filed the motion. Additionally, the Eleventh Circuit Court of Appeals has indicated that Johnson applies retroactively to a first motion to vacate. See In re Rivero, 797 F.3d 986, 988-89, 991 (11th Cir. 2015) (holding that Johnson announced a new substantive rule of constitutional law, in satisfaction of the first Teague[12] exception, and stating "[i]f Rivero… were seeking a first collateral review of his sentence, the new substantive rule from Johnson would apply retroactively."). Thus, the Court will consider Petitioner's Johnson claim.

Under the Armed Career Criminal Act ("ACCA"), a defendant who is convicted of violating § 922(g), and who has three prior felony convictions for either a violent felony or a serious drug offense, is subject to an enhanced 15-year mandatory minimum. 18 U.S.C. § 924(e)(1). The statute defines the term "violent felony" as follows:

> **(B)** the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that—
>
> > **(i)** has as an element the use, attempted use, or threatened use of physical force against the person of another; or
> >
> > **(ii)** is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B) (emphasis added). The emphasized words constitute the so-called "residual clause." In Johnson, the Supreme Court held that the residual clause

---

[12]    Teague v. Lane, 489 U.S. 288, 308 (1989) (plurality opinion).

was unconstitutionally vague.   135 S. Ct. at 2557.   The remaining portions of the statute remain intact, however.  Id. at 2563.

Petitioner is not entitled to relief on account of Johnson because he has three ACCA predicate convictions even excluding the residual clause.  Petitioner had (1) a prior felony conviction for armed robbery, (2) a prior felony conviction for aggravated battery, and (3) a pair of felony convictions for the sale or delivery of cocaine.  (See PSR at 1-2, 5 ¶ 28, 10-11 ¶ 43, 13 ¶ 47); (Crim. Doc. 96 at 3-4).[13]  Armed robbery qualifies as a violent felony because it "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i);  United States v. Dowd, 451 F.3d 1244, 1255 (11th Cir. 2006). Petitioner's aggravated battery conviction also qualifies as a violent felony, which has as an element the use of physical force against the person of another, where Petitioner did not contest the PSR's account that Petitioner and four others beat a group of individuals with shovels and pipes, resulting in the death of one of the victims. (PSR at 10-11 ¶ 43; Crim. Doc. 96 at 3-4).[14]  Finally, Petitioner's twin convictions for the

---

[13]     At the sentencing hearing, Petitioner did not contest that any of these prior offenses were qualifying predicate convictions under the ACCA.  (Crim. Doc. 96 at 3-4).

[14]     Aggravated battery under Florida law does not automatically qualify as a "violent felony" under the ACCA's "elements clause," 18 U.S.C. §924(e)(2)(B)(i), because Florida law defines "aggravated battery" to include merely touching a pregnant woman.  Fla. Stat. § 784.045(1)(b); see also Dixon v. United States, 588 F. App'x 918, 922 (11th Cir. 2014).  Additionally, Petitioner's state court judgment of conviction for aggravated battery and his plea agreement do not state whether he "[i]ntentionally or knowingly cause[d] great bodily harm, permanent disability, or permanent disfigurement" or "use[d] a deadly weapon," Fla. Stat. § 784.045(1)(a), or whether he simply touched a pregnant woman, Fla. Stat. § 784.045(1)(b). (Continued)

sale or delivery of cocaine qualify as a "serious drug offense." United States v. Horne, 206 F. App'x 942, 944 (11th Cir. 2006) (unpublished) (citing Fla. Stat. § 893.13(1)(a)(1), 18 U.S.C. § 924(e)(2)(A)(ii)).  Therefore, Petitioner still qualifies as an armed career criminal under the provisions of § 924(e) that remain valid after Johnson, so Johnson does not provide him relief.

Accordingly, it is hereby **ORDERED**:

1. Petitioner Keith Laron Brooks's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (Doc. 1) is **DENIED.**

2. Petitioner's Motion for Evidentiary Hearing (Doc. 22) is **DENIED AS MOOT**.

3. Consistent with the previous order (Doc. 41) denying Petitioner's Motion to Amend and/or Supplement (Doc. 24) and Petitioner's Motion for Leave to File

---

However, the PSR clarifies that Petitioner's aggravated battery conviction was for participating in a brutal beating.  At sentencing, the Court asked Petitioner's counsel whether "Mr. Brooks [had] any basis to disavow any of those convictions or to contend that they do not qualify for purposes of applying the Armed Career Criminal Act, 924(e)," and counsel responded "No, your Honor." (Crim. Doc. 96 at 4).  Thus, Petitioner admitted that the aggravated battery conviction qualified as an ACCA violent felony, and he did not dispute the PSR's description of the offense.

A court need not rely only on "Shepard documents" to clarify the nature of a prior conviction where a defendant admits the PSR's characterization of a prior offense as an ACCA violent felony.  United States v. Bennett, 472 F.3d 825, 832-34 (11th Cir. 2006); see also United States v. Beckles, 565 F.3d 832, 843 (11th Cir.2009) (explaining that "where ambiguity exists and the underlying conviction may be examined," in addition to Shepard materials, the district court "also may base its factual findings on undisputed statements found in the PSI, because they are factual findings to which the defendant has assented"); United States v. Wade, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes"); United States v. Wilson, 884 F.2d 1355, 1356 (11th Cir. 1989) ("The findings of fact of the sentencing court may be based on… undisputed statements in the presentence report[.]").  Accordingly, Petitioner's aggravated battery conviction properly counts as a "violent felony" for ACCA purposes.

a Reply to the United States' Sur-reply (Doc. 39), Petitioner's Motion for Leave

to Expand the Record (Doc. 34) is **DENIED** as well.

4.      Petitioner's Motion for Reconsideration (Doc. 42) is **DENIED** for the reasons

stated herein.

5.      Petitioner's <u>Johnson</u> Motion to Supplement (Doc. 43) is **GRANTED**, but the

substantive claim raised therein is **DENIED**.

6.      The Clerk shall enter judgment in favor of the United States and against Keith

Laron Brooks, and close the file.

## CERTIFICATE OF APPEALABILITY AND LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that Petitioner is not entitled to a certificate of

appealability.  A prisoner seeking a motion to vacate has no absolute entitlement to

appeal a district court's denial of his motion. 28 U.S.C. § 2253(c)(1).  Rather, a district

court must first issue a certificate of appealability (COA).  <u>Id.</u>  "A [COA] may issue…

only if the applicant has made a substantial showing of the denial of a constitutional

right."  <u>Id.</u> at § 2253(c)(2).  To make such a showing, Petitioner "must demonstrate

that reasonable jurists would find the district court's assessment of the constitutional

claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting

<u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were

'adequate to deserve encouragement to proceed further.'"  <u>Miller-El v. Cockrell</u>, 537

U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Petitioner has not made the requisite showing in these circumstances.   Because

Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

**DONE AND ORDERED** at Jacksonville, Florida this 8th day of January, 2016.

TIMOTHY J. CORRIGAN
United States District Judge

lc 19

Copies:

Counsel of record
Petitioner Keith Laron Brooks